| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>Raul Sloezen<br>Law Offices of Raul J. Sloezen, Esquire<br>18 Hasbrouck Ave<br>Emerson, NJ 07630<br>(973) 928-6821<br>rjsloezen@gmail.com<br><br>Attorney for Arthur Mogavero<br><br>       Creditor | |
| In Re:<br>  Monroe, Robert James | Case No.: 19-17733<br>Chapter: 13<br>Hearing Date: May 28, 2019 at 10:00 a.m.<br>Judge: Hon. Michael B. Kaplan, U.S.B.J. |

## OBJECTION TO CHAPTER 13 PLAN AND REQUEST FOR DISMISSAL AND DECLARATIONS OF ARTHUR MOGAVERO AND COUNSEL RAUL J. SLOEZEN, ESQUIRE

To: The Honorable Michael B. Kaplan, UNITED STATES BANKRUPTCY JUDGE, THE CHAPTER 13 TRUSTEE and to

Paul Anthony Figueroa, III, Esq.
Patel, Solits, Cardenas
574 Newark Avenue
Jersey City, New Jersey 07306
Attorney for Debtor

  Unlisted, Secured Creditor, Arthur Mogavero ("Creditor") files his Objection to the Debtor's Chapter 13 Plan filed on April 16, 2019 and requests that confirmation of the Plan be denied and the case be dismissed.

### I.

### INTRODUCTION

1. The Creditor objects to this Plan because, not only was it filed in bad faith, but it is wholly unfeasible and should be dismissed. The relevant issues are set forth below.

2. This Petition and Plan were filed on April 16, 2019, which was within 10 days of the Sheriff's Sale that took place on April 8, 2019. **(Exhibit 1 – Petition and Plan)** It was meant to improperly delay the

1

inevitable, i.e., the sale of the mortgaged property, 56 W. George Street, Freehold, New Jersey 07728-1949.(the "Property")

3. The Petition lists the name of the Creditor for the Property as the Monmouth County Sheriff, not the actual purchaser of the Property.

4. The Petition fails to list the Creditor as a creditor, despite the fact that Creditor is the second mortgagee on the Property.

5. The Petition states that his Plan shall make plan payments from future earnings, i.e., sale of the Property, which sale shall be completed by June 7, 2019, despite the fact that the Debtor does not have a proposed buyer of the Property.

6. Debtor's Petition certifies that he has not filed a bankruptcy petition in the last 8 years, when, in fact, he received he filed a Chapter 7 Petition on 8/1/2014 and received a discharge on 11/7/2014.

7. Debtor's Petition values the Property at $399,900.00, despite the fact that in Debtor's Petition filed on 8/1/2014, he listed the Property as valued at $200,000.00 and his wife, Joanne Monroe, ("Joanne") also listed the same property as valued at $200,000.00 on her Chapter 13 Petition that was filed on 2/2/2015. According to the Debtor and his wife, the value of the Property doubled in approximately 4 years.

8. Both the Debtor's 2014 Petition and Joanne's 2015 Petition listed Creditor as a Second Mortgage Holder on the Property but the current Petition fails to list Creditor.

9. The Debtor's current Petition seeks an Exemption of $25,150.00.

10. The Petition states that he and Joanne's combined monthly income is $4,225.00 and that they have combined monthly expenses of $4,185.00, which includes a $2,000.00 mortgage payment, which they apparently were not making because the Property was sold at Sheriff's sale.

11. The Petition states that the Property was seized on 4/8/2019 and that the value of the Property was $320,000.00.

12. The Petition also sets forth that the Debtor paid his attorney, Patel, Solits, Cardenas a total of $4,750.00 despite fact that he and his wife, Joanne, only have $40.00 available after expenses.

13. The success of the Plan is seemingly based upon the sale of the Property no later than June 7, 2019, despite not having a buyer, and it fails to offer proper protection to Creditor under the Plan.

2

14. The Plan is not feasible for the reasons set forth above.

15. Creditor requests that confirmation be denied and the case dismissed with a bar to re-filing.

## II.

## THE FACTS

16. On or about February 1, 2007, the Debtor and Joanne entered into a Mortgage and Note with JM Funding LLC, ("JM") for the amount of $400,000.00, plus interest and other fees and charges which was secured by the Property. **(Exhibit 2 – "JM Mortgage")**

17. In addition to the JM Mortgage, the obligation to JM was secured by: 1) a Promissory Note dated February 1, 2007, signed by W.M. Custom Builders, LLC and JM; 2) Guaranty dated February 1, 2007, signed by Allen Weiss and Robert Monroe; and 3) Security Agreement dated February 1, 2007 by and between W.M. Custom Builders, LLC and JM. **(Exhibit 3 – "Promissory Note", "Guaranty" and "Security Agreement")**

18. Pursuant to an Assignment dated November 5, 2009 JM assigned to Creditor, the Mortgage and Note which was recorded in the Monmouth County Clerk's Officed on November 12, 2009. **(Exhibit 4 – November 5, 2007 Assignment")**

19. On December 23, 2009, JM and Creditor signed an Amended Assignment of the JM Mortgage which was recorded in the Monmouth County Clerk's Office on December 29, 2009. **(Exhibit 5 – Amended Assignment")**

20. On August 1, 2014, the Debtor filed a Chapter 7 Voluntary Bankruptcy Petition in the United States Bankruptcy Court, District of New Jersey, Petition #14-25962. (the "2014 Bankruptcy") **(Exhibit 6 – Docket Report of the 2014 Bankruptcy)**

21. The Creditor was listed as a Creditor in the 2014 Bankruptcy. **(Exhibit 7 – Schedule D -Creditors Holding Secured Claims from 2014 Bankruptcy)** Schedule D states that the Property was purchased on September 20, 1991 for $106,900 but also states that the current tax assessment is $309,000.00.

22. However, the 2014 Bankruptcy Petition represented that the Property was valued at $200,000.00. **(Exhibit 8 – Schedule A – Real Property Form)**

23. On December 3, 2014, the Trustee abandoned the Property in the 2014 Bankruptcy. **(See Exhibit 6**

3

**2014 Bankruptcy Docket Report)**

24. On November 7, 2014, the Debtor received a discharge in the 2014 Bankruptcy. **(See Exhibit 6 – 2014 Bankruptcy Docket)**

25. On January 28, 2015, the 2014 Bankruptcy case was closed. **(See Exhibit 6 – 2014 Bankruptcy Docket)**

26. On February 2, 2015, Joanne filed a Chapter 13 Voluntary Bankruptcy Petition which was subsequently converted to a Chapter 7 Petition. **(the "Joanne Bankruptcy"; Exhibit 9 – Joanne Bankruptcy Docket)**

27. Schedule D – Creditors Holding Secured Claims of the Joanne Bankruptcy indicated that Creditor was listed as holding a second mortgage on the Property. **(Exhibit 10 – Schedule D -Creditors Holding Secured Claims from Joanne Bankruptcy)** In Joanne's Schedule D, she did not claim that the tax assessed value of the Property was $309,000.00 claimed by the Debtor. Joanne also claimed that Midland Mortgage had the First Mortgage and that the amount of Midland's claim was $153,240.33, and also stated that the amount of the Creditor's claim without deducting the value of the collateral was "$0.00". **(Exhibit 10)**

28. Schedule of Joanne's Petition states that the "Current Value of Debtor's [Joanne's] Interest in Property, without deducting any Secured Claim or Exemption" was $200,000.00. **(Exhibit 11 – Schedule A -Real Property from Joanne Bankruptcy)**

29. Joanne's Chapter 13 was converted to a Chapter 7 on June 3, 2015, on September 14, 2015, Joanne received a discharge and on October 10, 20, 2015, Joanne's Bankruptcy Case was terminated. **(Exhibit 9 – Joanne Bankruptcy Docket)**

30. Subsequent to Debtor's 2014 Bankruptcy case and Joanne's Bankruptcy being closed, the Debtor failed to make payments to Creditor regarding the mortgage.

31. Because the Debtor failed to make payments to Creditor, Creditor made plans to file a foreclosure action against the Debtor, in accordance with the JM Mortgage, Amended Assignment, Promissory Note, Guaranty and Security Agreement.

32. In order to prevent Creditor from foreclosing on the Property, on November 18, 2015, the Debtor reached out Creditor and/or his representatives, in order to resolve Creditor's claims mand entered into

settlement negotiations.

33. Regarding the settlement negotiations, Debtor and Joanne were represented by counsel, George Veitengruber, III, Esq. and Creditor was represented by David Meth, Esq.

34. In accordance with these settlement discussions, Mr. Veitengruber and Mr. Meth drafted an Agreement and Loan Modification in order to avoid that foreclosure, which were executed by the Debtor, Joanne and Creditor. **(Exhibit 12 – collectively the Agreement and Loan Modification are referred to as the "2015 Loan Agreements")**

35. The 2015 Agreements recited the existence of the Promissory Note, the Guaranty, the Security Agreement, the Mortgage as well as two (2) UCC Financing Statements between Allen Weiss and JM by and between Debtor, Joanne and JM.

36. The 2015 Agreements also stated that, as of February 2, 2015, Creditor was due $965,195.34 and acknowledged that Debtor and Joanne had each received a discharge in bankruptcy.

37. As a result of the 2015 Loan Agreements, the Debtor and Joanne agreed to pay $10,000.000 upon execution of the 2015 Loan Agreements, $10,000.00 on or before May 1, 2016, $100,000.00 on or before May 1, 2017, plus $500.00 per month beginning on November 1, 2015 as interest (with no reduction in principle). However, the 2015 Loan Agreements did state that if the Debtor and Joanne paid $90,000.00 by November 1, 2016, then the Debtor and Joanne were not required to pay the $100,000.00 by May 1, 2017.

38. (collectively, these payments are referred to as the "Loan Modifications Payments") The 2015 Loan Agreements stated that Creditor modified his lien upon the Property to $200,000.00 pending payments of the amounts due under the 2015 Loan Agreements.

39. In addition to other duties and obligations of the Debtor and Joanne, Creditor agreed that he "shall take no court action to enforce any debt owing and due from [Debtor and Joanne] so long as [Debtor and Joanne] are not in default of any provision of this Agreement." (Para. 5 (a) of the Agreement)

40. Subsequent to executing the 2015 Loan Agreements, the Debtor and Joanne made total payments in the amount $24,000. **(Exhibit 13 – Copies of Checks from Joanne)**

41. Prior to the 2015 Agreements and her bankruptcy, Joanne was only a signatory to the JM Mortgage but

not the Promissory Note, Guaranty or the Security Agreement. However, in accordance with the 2015 Loan Agreements, Joanne now became obligated to Creditor for the Loan Modifications Payments.

42. On November 25, 2015, the First Mortgagor, MidFirst Bank, entered into a Loan Modification with the Debtor and Joanne but on July 1, 2017, the Debtor and Joanne defaulted on the MidFirst Modification, resulting in MidFirst filing a Foreclosure action against Debtor and Joanne on February 19, 2018. **(Exhibit 14 – See Complaint in Foreclosure, *MidFirst Bank v. Robert J. Monroe, et al.* Docket SWC-F-003567-18, Para. 12)**

43. On January 23, 2019, MidFirst obtained an Uncontested Order for Final Judgment and Writ of Execution. **(Exhibit 15 – Docket Sheet for the MidFirst Foreclosure Action)**

44. On April 8, 2019, a Sheriff's Sale was conducted of the Property, and the successful bid was $235,000 (?).

45. On April 16, 2019, the Debtor filed the Chapter 13 Bankruptcy Petition, which was within the 10 day redemption period.

46. Clearly, the current bankruptcy petition was filed in order to delay the pending sale for no reason other than the improbable hope that the Creditor would become the Debtor's knight in shining armor and agree to redeem the Property on behalf of Debtor. That is simply not going to happen.

47. The Bankruptcy Petition raises several issues regarding issues of fraud and feasibility.

48. The first issue is that the Debtor states under penalty of perjury that he has not filed for bankruptcy in the last 8 years. Clearly that is false. The debtor last filed for bankruptcy in 2014 and received a discharge in 2015.

49. The debtor is fully aware of the Creditor's interest in the Property. The debtor listed the Creditor in his prior bankruptcy, as did Joanne. However, for some inexplicable reason, the debtor failed to reference Creditor in this bankruptcy.

50. Also, in debtor's 2014 petition and Joanne's 2015 petition, they both valued the property at $200,000.00. Yet now, in 2019, they claim that the Property has doubled in value in approximately 4 years, a mindboggling increase.

6

51. According to the Debtor's current petition, he claims that he pays $2,000.00 a month for his mortgage and that, as a result, he can only afford to pay $40.00 a month toward the plan. However, according to the Foreclosure complaint, the Debtor has not made a mortgage payment since July 2017. Almost two years ago.

52. If the Debtor's petition is to be believed, then that is approximately $40,000.00 additional assets that are available. That would explain where Debtor got the $4,750.00 to pay for his attorneys fees to file the bankruptcy. However, that still leaves approximately $35,000.00 that's unaccounted for.

53. Official Form 106Sum requests a summary of assets and liabilities. In addition to claiming the Property is valued at $399,900.00, he also claims personal property in the amount of $16,792.00. According to Schedule A/B, this $16,792 consists of various home appliances, and cell phone, computer, jewelry.

54. Part 4 of that section then asks about cash on hand. Debtor confirms that he has cash on hand in the amount of $10.00.

55. Official Form 107, Statement of Financial Affairs for Individuals Filing for Bankruptcy addresses assets and income. In Part 3, paragraph 6, Debtor claims that he did not pay any creditor a total of $600.00 during the 90 days prior to filing bankruptcy.

56. He also claims to not have made any payments to an "insider" within one year of filing.

57. In part 5, paragraph, debtor claims that the value of the Property was $320,000.00, which $120,000.00 more than what he and Joanne claimed in 2014 and 2015 and $80,000.00 less than what he claimed in this same petition.

58. If this petition is accurate, there is no explanation for what has happened to approximately $35,000.00 over the last 2 years.

59. A bankruptcy court may dismiss a Chapter 13 petition that is filed in bad faith "for cause" under 11 U.S.C. § 1307(c). *See In re Mondelli*, 558 Fed.Appx. 260 (3rd 2014) In determining whether a bankruptcy was filed in bad faith, courts look to the factors articulated in *In re Lilley*, 91 F.3d 491 (3d Cir.1996), which include:

> [T]he nature of the debt; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's

7

actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors. *Mondelli, supra.*

60. In *Mondelli*, the Court noted that Mondelli's filing of the petition on the morning of the scheduled sheriff's sale was suspicious and that it appeared that the filing was merely to delay the sale. Similarly, the Debtor filed the petition 8 days after the sheriff's sale, i.e., within the 10 day redemption period which was clearly intended to delay the outcome of the sale.

61. The Debtor also did not include Creditor as a creditor in the bankruptcy and did not advise the Court and the Trustee that Creditor had a claim to the Property, despite the fact that Creditor was listed in both the 2014 Bankruptcy and Joanne's Bankruptcy.

62. Did debtor "forget" that Creditor existed? Unlikely, since Debtor and Joanne made payments to Creditor totaling $24,000.00 from November 2015 through June 2018 and included him on the prior bankruptcies in the last 4 years.

63. In fact, according to the petition, the only secured creditor is MidFirst, i.e., the mortgagee who foreclosed on the Property.

64. The only other creditor listed was First Financial Credit Union in the amount of $12,000.00 for a car loan for a 2012 Audi Q7.

65. These are allegedly the only debts of the debtor. Is that possible? Highly unlikely.

66. The Debtor also lied on his bankruptcy petition claiming that he has not filed a bankruptcy in the last 8 years.

67. He clearly fails the test as to whether he has been forthcoming with the bankruptcy court and the creditors.

68. The Plan states that his monthly payment for the car loan is $450.00. He also states that his monthly net income is $40.00 to pay into the plan.

69. The plan calls for monthly payments of $40.00 to the Trustee for approximately 60 months. These payments are from future earnings, specifically the sale of the Real Property, which Debtor expected to be completed by 6/7/2019.

8

70. The plan is confusing because if he is selling the Property, then presumably it will be sufficient to cover

71. the obligation to MidFirst. Then, according to his petition, the only obligation left is for the car loan, $450.00, which he apparently has sufficient income to pay on a monthly basis.

72. It is unclear why he needs a payment plan if there will be no debts once he sells his Property.

73. Furthermore, the plan is not feasible. In a recent New Jersey Bankruptcy Court decision, *In re Colosi*, 2018 WL 2972342 (N.J.Bank.Ct. 2018) (not for publication), the Honorable Jerrold N. Poslusny, Jr., discussed plan feasibility. There he said that:

> A Chapter 13 plan must be feasible. 11 U.S.C. § 1325(a)(6). This section provides that a court shall confirm a plan if the debtor will be able to comply with and make all payments under the plan. Id. "To satisfy the feasibility requirement, a debtor's plan must have a reasonable likelihood of success, and the debtor must be able to demonstrate that she has both the present and future capacity to meet the requirements of the proposed plan." Austin v. Bankowski, 519 B.R. 559, 566 (D. Mass. 2014) see also In re Heck, 355 B.R. 813, 823-25 (Bankr. D. Kan. 2006) (debtor's plan was not feasible because she did not have sufficient income to make all payments under the plan). Under a totality of the circumstances test for determining feasibility, the court considers: (1) the debtor's equity in the property at the time of filing; (2) future earning capacity of the debtor; (3) future disposable income of the debtor; (4) whether the plan provides for payment of interest to the secured creditor over the life of the plan; (5) whether the plan provides for payment of recurring charges against the property, including insurance, local property taxes and utility charges; and (6) whether the plan provides for substantial payments to the secured creditor which will significantly reduce the debt and enhance prospects for refinancing at the end of the plan. In re St. Cloud and Jeudi, 209 B.R. 801 (Bankr. D. Mass, 1997)

74. The court in *Colosi* went on to say that "in a situation where a debtor's ability to make payments under the proposed Chapter 13 plan relies on the refinancing of assets or the selling of properties, a court should deny confirmation when it considers the contingency too speculative. See In re Gavia, 24 B.R. 216, 218 (Bankr. E.D. Cal. 1982) (denying confirmation of a Chapter 13 plan where payments relied on the sale of the debtor's home); Austin, 519 B.R. at 566 (holding that the debtor's plan was not feasible

9

when it relied on a loan modification).

75. Here, the plan relies solely on the sale of the Property, which the debtor claims will be completed by June 7, 2019, less than a month after the filing of the bankruptcy petition.

76. After creditor received notice of the bankruptcy filing, he instructed his attorney, Raul J. Sloezen, Esq., ton contact Debtor's attorney to discuss the filing of the petition.

77. Pursuant to those instructions, Mr. Sloezen called Debtor's attorneys, Veer Patel, Esq. and Paul Figueroa, Esq., on April 25, 2019 to discuss some issues regarding the petition. One of the issues was whether the debtor had a potential buyer for the Property and whether he would be able to sell the Property by June 7, 2019.

78. According to Mr. Sloezen, the Mssrs. Patel and Figueroa stated that the Debtor did not have a buyer for the Property.

79. The plan is based upon mere speculation. There is no reasonable likelihood of success. Creditor requests that confirmation of the Plan be denied and the case be dismissed with prejudice.

Dated: May 10, 2019						Law Offices of Raul J. Sloezen, Esq.

/s/ *Raul J. Sloezen*
Raul J. Sloezen, Esq.
Attorney for Creditor
Arthur Mogavero

## DECLARATION OF ARTHUR MOGAVERO

I, Arthur Mogavero, declare as follows:

80. I am the unlisted Creditor objecting to the Plan that was filed with the Petition on April 16, 2019. A true and correct copy of the Petition and Plan are attached as Exhibit 1. I have personal knowledge of the following. The facts set forth herein are of my own personal knowledge, and if called upon to testify, I would testify to the following.

81. On or about February 1, 2007, the Debtor and Joanne entered into a Mortgage and Note with JM Funding LLC, ("JM") for the amount of $400,000.00, plus interest and other fees and charges which was secured by the Property. A true and correct copy of the **JM Mortgage is attached as Exhibit 2.**

82. In addition to the JM Mortgage, the obligation to JM was secured by: 1) a Promissory Note dated February 1, 2007, signed by W.M. Custom Builders, LLC and JM; 2) Guaranty dated February 1, 2007, signed by Allen Weiss and Robert Monroe; and 3) Security Agreement dated February 1, 2007 by and between W.M. Custom Builders, LLC and JM. A true and correct copy of the **"Promissory Note", "Guaranty" and "Security Agreement" are attached as Exhibit 3.**

83. Pursuant to an Assignment dated November 5, 2009 JM assigned to me, the Mortgage and Note which was recorded in the Monmouth County Clerk's Officed on November 12, 2009. A true and correct copy of the **November 5, 2007 Assignment" is attached as Exhibit 4.**

84. On December 23, 2009, JM and I signed an Amended Assignment of the JM Mortgage which was recorded in the Monmouth County Clerk's Office on December 29, 2009. A true and correct copy of the **Amended Assignment is attached as Exhibit 5**

85. On August 1, 2014, the Debtor filed a Chapter 7 Voluntary Bankruptcy Petition in the United States Bankruptcy Court, District of New Jersey, Petition #14-25962. (the "2014 Bankruptcy") A true and correct copy of the **Docket Report of the 2014 Bankruptcy is attached as Exhibit 6.**

86. I was listed as a creditor in the 2014 Bankruptcy. A true and correct copy of the **Schedule D -Creditors Holding Secured Claims from 2014 Bankruptcy is attached as Exhibit 7.**

87. Schedule D states that the Property was purchased on September 20, 1991 for $106,900 but also states

11

that the current tax assessment is $309,000.00.

88. However, the 2014 Bankruptcy Petition represented that the Property was valued at $200,000.00. A true and correct copy of the **Schedule A – Real Property Form is attached as Exhibit 8.**

89. On December 3, 2014, the Trustee abandoned the Property in the 2014 Bankruptcy. **(See Exhibit 6)**

90. On November 7, 2014, the Debtor received a discharge in the 2014 Bankruptcy. **(See Exhibit 6)**

91. On January 28, 2015, the 2014 Bankruptcy case was closed. **(See Exhibit 6)**

92. On February 2, 2015, Joanne filed a Chapter 13 Voluntary Bankruptcy Petition which was subsequently converted to a Chapter 7 Petition. A true and correct copy of the **Joanne Bankruptcy Docket is attached as Exhibit 9.**

93. Schedule D – Creditors Holding Secured Claims of the Joanne Bankruptcy indicated that I was listed as holding a second mortgage on the Property. A true and correct copy of the **Schedule D -Creditors Holding Secured Claims from Joanne Bankruptcy is attached as Exhibit 10.** In Joanne's Schedule D, she did not claim that the tax assessed value of the Property was $309,000.00 claimed by the Debtor. Joanne also claimed that Midland Mortgage had the First Mortgage and that the amount of Midland's claim was $153,240.33, and also stated that the amount of my claim without deducting the value of the collateral was "$0.00". See **Exhibit 10**

94. Schedule of Joanne's Petition states that the "Current Value of Debtor's [Joanne's] Interest in Property; without deducting any Secured Claim or Exemption" was $200,000.00. A true and correct copy of the **Schedule A -Real Property from Joanne Bankruptcy is attached as Exhibit 11.**

95. Joanne's Chapter 13 was converted to a Chapter 7 on June 3, 2015, on September 14, 2015, Joanne received a discharge and on October 10, 20, 2015, Joanne's Bankruptcy was terminated. **(See Exhibit 9)**

96. Subsequent to Debtor's 2014 Bankruptcy case and Joanne's Bankruptcy being closed, the Debtor failed to make payments to me regarding the mortgage.

97. Because the Debtor failed to make payments to me, I made plans to file a foreclosure action against the Debtor, in accordance with the JM Mortgage, Amended Assignment, Promissory Note, Guaranty and

Security Agreement.

98. In order to prevent me from foreclosing on the Property, on November 18, 2015, the Debtor reached out to me and my representatives, in order to resolve my claims mand entered into settlement negotiations.

99. Regarding the settlement negotiations, Debtor and Joanne were represented by counsel, George Veitengruber, III, Esq. and I was represented by David Meth, Esq.

100. In accordance with these settlement discussions, Mr. Veitengruber and Mr. Meth drafted an Agreement and Loan Modification in order to avoid that foreclosure, which were executed by the Debtor, Joanne and me. A true and correct copy of the **Agreement and Loan Modification, referred to as the "2015 Loan Agreements, are attached as Exhibit 12.**

101. The 2015 Agreements recited the existence of the Promissory Note, the Guaranty, the Security Agreement, the Mortgage as well as two (2) UCC Financing Statements between Allen Weiss and JM by and between Debtor, Joanne and JM.

102. The 2015 Agreements also stated that, as of February 2, 2015, I was due $965,195.34 and acknowledged that Debtor and Joanne had each received a discharge in bankruptcy.

103. As a result of the 2015 Loan Agreements, the Debtor and Joanne agreed to pay me $10,000.000 upon execution of the 2015 Loan Agreements, $10,000.00 on or before May 1, 2016, $100,000.00 on or before May 1, 2017, plus $500.00 per month beginning on November 1, 2015 as interest (with no reduction in principle). However, the 2015 Loan Agreements did state that if the Debtor and Joanne paid $90,000.00 by November 1, 2016, then the Debtor and Joanne were not required to pay the $100,000.00 by May 1, 2017.(collectively, these payments are referred to as the "Loan Modifications Payments") The 2015 Loan Agreements stated that I modified my lien upon the Property to $200,000.00 pending payments of the amounts due under the 2015 Loan Agreements.

104. In addition to other duties and obligations of the Debtor and Joanne, I agreed that I "shall take no court action to enforce any debt owing and due from [Debtor and Joanne] so long as [Debtor and Joanne] are not in default of any provision of this Agreement." (Para. 5 (a) of the Agreement)

105. Subsequent to executing the 2015 Loan Agreements, the Debtor and Joanne made total payments

13

in the amount $24,000. A true and correct copy of the **Copies of Checks from Joanne are attached as Exhibit 13.**

106. Prior to the 2015 Agreements and her bankruptcy, Joanne was only a signatory to the JM Mortgage but not the Promissory Note, Guaranty or the Security Agreement. However, in accordance with the 2015 Loan Agreements, Joanne now became obligated to me for the Loan Modifications Payments.

107. On November 25, 2015, the First Mortgagor, MidFirst Bank, entered into a Loan Modification with the Debtor and Joanne but on July 1, 2017, the Debtor and Joanne defaulted on the MidFirst Modification, resulting in MidFirst filing a Foreclosure action against Debtor and Joanne on February 19, 2018. A true and correct copy of the **Complaint in Foreclosure,** *MidFirst Bank v. Robert J. Monroe, et al.* **Docket SWC-F-003567-18, Para. 12 is attached as Exhibit 14.**

108. On January 23, 2019, MidFirst obtained an Uncontested Order for Final Judgment and Writ of Execution. A true and correct copy of the **Docket Sheet for the MidFirst Foreclosure Action is attached as Exhibit 15.**

109. On April 8, 2019, a Sheriff's Sale was conducted of the Property, and I believe the successful bid was $235,000.00.

110. On April 16, 2019, the Debtor filed the Chapter 13 Bankruptcy Petition, which was within the 10 day redemption period.

111. Clearly, the current bankruptcy petition was filed in order to delay the pending sale for no reason other than the improbable hope that the Creditor would become the Debtor's knight in shining armor and agree to redeem the Property on behalf of Debtor. That is simply not going to happen.

112. The Bankruptcy Petition raises several issues regarding issues of fraud and feasibility.

113. The first issue is that the Debtor states under penalty of perjury that he has not filed for bankruptcy in the last 8 years. Clearly that is false. The debtor last filed for bankruptcy in 2014 and received a discharge in 2015.

114. The debtor is fully aware of the Creditor's interest in the Property. The debtor listed the Creditor in his prior bankruptcy, as did Joanne. However, for some inexplicable reason, the debtor failed to reference

Creditor in this bankruptcy.

115. Also, in debtor's 2014 petition and Joanne's 2015 petition, they both valued the property at $200,000.00. Yet now, in 2019, they claim that the Property has doubled in value in approximately 4 years, a mindboggling increase.

116. According to the Debtor's current petition, he claims that he pays $2,000.00 a month for his mortgage and that, as a result, he can only afford to pay $40.00 a month toward the plan. However, according to the Foreclosure complaint, the Debtor has not made a mortgage payment since July 2017. Almost two years ago.

117. If the Debtor's petition is to be believed, then that is approximately $40,000.00 additional assets that are available. That would explain where Debtor got the $4,750.00 to pay for his attorneys fees to file the bankruptcy. However, that still leaves approximately $35,000.00 that's unaccounted for.

118. Official Form 106Sum requests a summary of assets and liabilities. In addition to claiming the Property is valued at $399,900.00, he also claims personal property in the amount of $16,792.00. According to Schedule A/B, this $16,792 consists of various home appliances, and cell phone, computer, jewelry.

119. Part 4 of that section then asks about cash on hand. Debtor confirms that he has cash on hand in the amount of $10.00.

120. Official Form 107, Statement of Financial Affairs for Individuals Filing for Bankruptcy addresses assets and income. In Part 3, paragraph 6, Debtor claims that he did not pay any creditor a total of $600.00 during the 90 days prior to filing bankruptcy.

121. He also claims to not have made any payments to an "insider" within one year of filing.

122. In part 5, paragraph, debtor claims that the value of the Property was $320,000.00, which $120,000.00 more than what he and Joanne claimed in 2014 and 2015 and $80,000.00 less than what he claimed in this same petition.

123. If this petition is accurate, there is no explanation for what has happened to approximately $35,000.00 over the last 2 years.

124. According to the petition, the only secured creditor is MidFirst, i.e., the mortgagee who foreclosed

15

on the Property.

125. The only other creditor listed was First Financial Credit Union in the amount of $12,000.00 for a car loan for a 2012 Audi Q7.

126. These are allegedly the only debts of the debtor.

127. The Debtor also lied on his bankruptcy petition claiming that he has not filed a bankruptcy in the last 8 years.

128. After I received notice of the bankruptcy filing, I instructed my attorney, Raul J. Sloezen, Esq. to contact Debtor's attorney to discuss the filing of the petition.

129. Pursuant to those instructions, Mr. Sloezen called Debtor's attorneys, Veer Patel, Esq. and Paul Figueroa, Esq., on April 25, 2019 to discuss some issues regarding the petition. One of the issues was whether the debtor had a potential buyer for the Property and whether he would be able to sell the Property by June 7, 2019.

130. According to Mr. Sloezen, the Mssrs. Patel and Figueroa stated that the Debtor did not have a buyer for the Property.

131. The plan is based upon mere speculation. There is no reasonable likelihood of success.

132. The Debtor should be required to explain if he had, or has, a buyer for the Property and for how much, and when he found out about this potential buyer.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. This Declaration was executed on May 10, 2019, in Palm City, Florida.

_____ 5/11/2019
Arthur Mogavero

## DECLARATION OF RAUL J. SLOEZEN

I, Raul J. Sloezen, declare as follows:

133. I am the attorney for the Objecting Creditor, Arthur Mogavero. I have personal knowledge of the following. The facts set forth herein are of my own personal knowledge, and if called upon to testify, I would testify to the following.

134. On April 24, 2019, I was retained to represent the Creditor, Arthur Mogavero in the Debtor's bankruptcy Case.

135. After reviewing the bankruptcy petition, it was agreed that I would contact the Debtor's attorneys to discuss the filing, specifically the potential buyer for the Property since the plan states that the plan would be completed by June 7, 2019.

136. Among other issues that we discussed, I asked the Debtor's attorney, Veer Patel, Esq., and Paul Figueroa, Esq., if they were aware of any potential buyer for the Property.

137. They told me that they were not aware of any buyer of the property other than the purchaser at the sheriff's sale.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. This Declaration was executed on May 10, 2019, in Emerson, New Jersey.

Dated: May 10, 2019
/s/ *Raul J. Sloezen*
Raul J. Sloezen, Esq.